My name is Sharon Van Dyke, and I'm here representing the plaintiff appellant, Scott Wolfe. The immediate question before the Court is whether or not the RLA, the Rail Labor Act, preempts Mr. Wolfe's cause of action. A secondary and related issue has arisen based on this Court's order of last week, which has to do with whether or not Mr. Wolfe's claims are precluded. I'll start with the basic premise on which the case was originally appealed, which is whether or not the RLA preempts the cause of action. I want to clarify exactly what's before the Court on appeal, because if you read the two sets of briefs, it would be easy to confuse what's on appeal. But the fact of the matter is that this case is – has its origin out of a Montana statute that specifically provides a tort to an individual rail employee. The part – only a portion of the underlying dismissal was appealed. That's been explicit from the beginning. I'm sorry. I'll try and get closer. That'll bend if you want it to. Okay. Is that better? Oh, yes. I can tell it is. Okay. Only one of the matters that were dismissed below is here on appeal, and that's important to recognize. And that's the one in paragraph 26A of the amended complaint. It is only the pre-accident conduct that is being challenged on appeal. All of the rest of it we abandoned. This hasn't been correctly decided, and so it's really not before this Court and will never be tried. With respect to the RLA preemption under the Norris standard, I believe the status of the case is that there is no dispute that this is an independent action. It's an independent right substantively given to railroad employees by Montana statute. It does not arise out of the collective bargaining agreement at all. It's independent in that sense. And so the only way that this claim could be preempted would be on the secondary consideration under the Norris standard of whether or not the remaining claim, not the others, the remaining claims, substantially depend on an interpretation of the CBA in order to be resolved. That's what I don't understand. I don't understand how it couldn't. It seems to me to be a bit of a brain teaser. Your client's only damage is for back pay? Yes? No, Your Honor. If you look at the amended complaint, which lays out the case, the damages, since it's a tort, you get tort damages. And I can admit that there's ambiguity here just because of the way the statute is worded. It's an unusual statute. He gets any damages proximately caused. Right. But he was reinstated. So he's looking for some back pay and perhaps emotional distress damages, I think? Emotional distress damages, back pay. And the order, if you look at the order of the ---- Well, if I could get to my question, it might be more productive for you. Yes, certainly. Because I'm delighted to have you correct me if I'm wrong. But the way I'm thinking about this, counsel, my difficulty is that it seems under this State statute that you're proceeding under, setting aside the investigation claim, I think we all understand that, that your client has to show that his damages were caused by what you're arguing is the ---- I think of it as the dispatcher's conduct, but the operation, operational claim. Yes? It's two-part, but that's part of it, yes. And I realize I'm trying to frame my question using these very broad terms, and probably not very precise terms, but I'm just trying to, you know, parse 26A. And so it seems to me that I don't know how to get away from the fact that the question of whether your client's damages, the ones that flowed from his termination, aren't inextricably intertwined with the CBA because of the disciplinary process. How do I get around that? The way you get around that is to look very carefully. And I think this is where it runs right into the preclusion question that was asked. When I got around to understanding, trying to apply that, I discovered that the two, you have to handle both, hence the question. If you look at award number 41142, which is the pertinent award of the Adjustment Board, in terms of findings, and remember under Norris, the fact that facts are inextricably intertwined and you end up dealing with the same facts, in an administrative hearing in a court case, that's okay. Sure. But if Burlington Northern had the right to terminate your client as a result of the process set out in the collecting bargaining agreement, which I think is their position, then it seems to me you have a big problem. I understand that it's not just the common facts that would defeat your client's claim, but if you could help me focus. Yes. And I think that it's fundamental to. I just can't understand your talk. Go ahead. The, all that was decided in the award, in terms of, has to do with whether or not, there were two findings that were pertinent. One was that the claimant failed to engage his HLCS, and the second one is that he violated the track authority. Those were the two findings, not negligence. If you go back and see what was requested, what was requested was that, especially with respect to the violation of the track authority, were two rules that were requested and ruled on initially. One was did you violate your track authority on one rule. One was were you negligent. If you could just talk a little slower, they may not see it. Okay. The negligence issue was not decided by the adjustment board. The, the, then I'm not understanding your question. My understanding of the law is that if we have to refer to the collective bargaining agreement in order to resolve this question about what caused your client to be terminated, then the claim is preempted. That is the absolute Reader's Digest condensed version of my understanding. And I'm trying to get, see what is your response to that. My response is that if you, the way you use the word refer to is that's an incorrect statement of the law. The, the correct statement of the law for preemption purposes is whether, not whether you can refer to or look to it, but whether. Grounded. Is that the word you're looking for? I'm looking for, well, there's, there's a dichotomy in the case law. And you, it's okay to look to, to refer to the CBA to resolve a State claim. What's not okay, what does preempt is where the resolution of the claim substantially depends on interpreting, interpreting. Yes, I understand that. And, and I think what you're asking me is if you've got the causal question dependent in, in the State law claim on, on the, okay, I think I'm, I'm understanding how to answer your question. Okay. Okay. And this goes back to how the, the tort is constructed. Okay. Okay. The tort is constructed where there has to be a causal relationship between the negligence of somebody in the railroad. And your client's position is that the dispatcher was negligent. The dispatcher, the members, the people who didn't train him on the HLCS. There are several of those claims, but they're all pre-accidental. Okay. Okay. The echo makes it really hard to understand you. If you could slow down. Okay. The HLCS? Yes. What does that say? It's the high rail limits. It's the thing that, it's the GPS that tracks the high rail. It's. Why don't you just say that? They're trying to get away from all these initials. I hate them, too. The locator. I'll call it the locator. They're mine, but, but I, I don't like them. Well, I'll call it the locator. Someone didn't train him on the locator so that they could track where he was. Somebody screwed up and sent him in the wrong direction. That's the dispatcher. But all of that being what it is, what we're left with is what was the injury for that? The injury for that to him was the disciplinary proceeding, which culminated at least at the time, in discharge. I think what we're left with and how I'm thinking of it, which may be incorrect, so please correct me if I'm incorrect. But I don't know that we're left with what were the damages. We're left with what caused, I'm looking at the causation element, what caused your client to be terminated. And if Burlington Northern had the right to terminate him as a result of the process set out in the collective bargaining agreement, then I don't understand why this claim is not preempted. Because the right for BNSF to terminate him would have had to have been was because he violated a rule. Okay? That's not the same thing as what caused him his loss. Because if he violated a rule, they had a right to discipline him per the CBA. Right. And that discipline could have been slap your hand, turn the other way, 30-day suspension, no back pay, anything. Could have been any of those things. The idea that it's okay to terminate someone pursuant to the CBA, and yet somehow that precludes you from bringing a state cause of action, that's not how it works. All you have to do is look at the cases that deal with things like FELA claims. Okay? FELA claims are negligence claims as well. It can be perfectly legitimate under a CBA going through the whole administrative process, to terminate someone for some kind of injury because they can't do their job, even if they got the injury on the job. The CBA would authorize that dismissal. Everything would, if you're looking only at the CBA, it would be okay. But because the independent state law refuses to... What does the state law say? So people sitting in the back know what we're talking about. The state law in Montana says that a person or corporation operating a railroad here, BNSF, in this state, Montana, is liable for all damages sustained by any employee or person, that's by my client, in consequence of the neglect of any other employee or mismanagement of an employee. And then it goes on to say whether commission or omission. But basically it says you're liable for any loss. In this particular instance, Mr. and the reason it's different is that the dispatcher's negligence, the management of the failure to train, none of that had the adjustment board make absolutely no finding on any of that. That wasn't their function. Their function was to see if the violator rule, was that a rule something that was going through, you know, this process by the CBA, and under the CBA guidelines, was it okay to terminate him? And if it was... If it was, that still doesn't mean he doesn't have a get damages claim for the proportion of the reason and rationale for how he ended up in the wrong place on the track. If the CBA gave him the right to, gave the railroad the right to terminate him... Yes. ...because he violated a rule, any rule, then I don't know how you prove causation without, this goes to the inextricable intertwining of the two claims in the preemption question. The same way a CBA gives a railroad a right to terminate someone who fails a drug test, and yet he can't be terminated as entitled to damages under violation of the ADA. The same way that a CBA gives you the right to terminate because you no longer, you can't work in a hot climate, okay? The CBA says, yep, you can. The federal statute says, or the state statute says, no, you can't. Well, yes, they could, but they still have a claim for the other statute for damages. The two legally are distinct. There's no requirement that the CBA, you know, be wrong, basically. You can have a right under a CBA as long as it's an independent state cause of action. Right. Stating that test, which I think we all agree upon, kind of begs the question, right? Yes. That's the issue. Can I have you walk me through a couple things? Certainly. All right. Let's assume you pled two separate claims, because I know that's in dispute. Let's assume you pled two separate claims in your amended complaint, one against the railroad for negligently causing the collision, and one against the railroad for mismanaging its disciplinary proceedings against your client. Is that? No. Okay. There were three mismanagement claims, which are the second one I think you're talking about, Your Honor, and those had everything to do with the whole administrative procedure. After we got to the appellate phase ---- I thought your claims were, the State claims were based on the dispatcher. The dispatcher's negligence. East, dispatcher sent him west. Correct. And under the State law ---- That's one of your State law claims. Correct. So you're after the dispatcher. We're after a comparative negligence suit, which is how it would be handled in State court. What are your damages on the first claim? He wasn't injured in the collision, and if your claim is, well, the accident resulted in his being disciplined, we now have an award from the NRAB, correct? We do. All right. Saying your client should have been disciplined, just maybe not to the accident caused your client to lose? I'm trying to figure that out. He lost three years of back pay. He lost, and it's a practical matter, it's not in the record, he isn't back to work. So you would seek the back pay. Correct. He would seek the emotional distress of having been discharged. You know, let me get this straight in my mind, because you're confusing me. His Montana State law claims are one, the dispatcher was negligent. Am I right about that? Yes. The other was, on mismanagement, that that rig that he was using initials on was defective. Correct. Okay. So those are those ---- that's the basis of those two State law claims. Correct. And you don't have to look at the collective bargaining agreement or interpret the collective bargaining agreement to determine whether there was the dispatcher was negligent or that the company put out and had him use a defective device. Correct. Right? That's the guts of my claim. But why don't you just say that? I was trying to. It was ---- that is the guts of my claim. And I think that you have to look at the ---- we don't have to look at the collective bargaining agreement to get there. Let me ask this next question, if you can just walk me through it, okay? I'm trying to figure out how it's possible that the NRAB award isn't precluded, okay? You agree that the parties to this proceeding and the NRAB proceeding were the same or at least in privity, is that correct? They're in privity. Okay. I mean, it's a union representative for my client. That's fine. Do you agree that the NRAB proceeding, in that proceeding your client advanced the argument that the dispatcher's negligence caused the accident? Certainly the union brought that up. So yes or no? The union brought that up. So that is yes. That's a yes. Okay. Do you agree that the NRAB award must have rested in part on a finding that your client was at least partly negligent in causing the collision? No. How is that possible based on their decision? Their decision, which is actually only on the last page. I understand. Okay? They found my client violated his track authority. They did not find him negligent. So what does that mean that he violated his track authority? There were two rules involved under which they could have found him guilty of being in the wrong place. Well, his track authority came from the company. They told him where he had to go and how he had to get there. Correct. And then he told the dispatcher. He gave the dispatcher that information. Somehow the dispatcher got something mixed up and sent him in the wrong direction. Correct. Why don't you say that? That's the guts of it. But in answering the rule question, Rule 10.3, and slayed out in the administrative board's document, BNSF was saying that rule you violated, your failure to have track and time authority caused the collision. Okay? That can happen with or without negligence. Right. But if it happens, if they make the finding that you just explained to us, that your client was found to have violated his track authority, is the railroad permitted to discipline, up to terminate him? They're certainly entitled to discipline him. Obviously, I would say, no, they can't terminate him. And, in fact, the board said they can't for that. So, right. That was the sanctions question. But this goes to causation. If they could have, as a result of that rule violation, if they could have taken discipline and did, take disciplinary action against him, why doesn't that defeat your causation element in the state law claim? Because the fact that they could do it pursuant to the CBA is the foreseeable response to the negligence. It does not address the negligence. And causation is at least in part, in fact, almost totally a function of foreseeability when conduct is negligent. And so when you've got conduct by co-employees that is negligent, even if it's only partially negligent because it's a comparative negligent state, if you have the negligent conduct of a co-employee in which playing that out becomes the proximate cause of something that is foreseeable, such as ending up in the wrong place at the wrong time that ends up with you saying absolutely he violated the track authority that was given to him, you've got causation, whether or not the adjustment board ever addressed the question. Well, Montana has comparative negligence, but if it's 50-50, the plaintiff loses. If it's 50-50, he eats 50 percent of his fault. If it's 51 and he's the 51, he loses. If it's 50-50, he loses. He gets 50 percent of his damages unless I'm responsible. He loses. Okay. And I've had all these cases in Montana. Did you check that out? Yes, I did. Did they amend the statute? Well, it's been amended, but it was not that recently. It's like in the 90s. When did they amend it? 1994. 1994. It's still comparative negligence. He would have to prove the percent that they mandate. Well, if the jury comes back with a verdict that they're equally at fault. It would be governed by the Montana statute. Then he'd get nothing. He could. That's the way it works. Yes, he could. I had a jury come back on Christmas Eve. I'll never forget it. 50-50. My time is up. Thank you. Good morning. Donald Monroe for BNSF Railway. I have three points that I'd like to make. It's the biggest railway in America. By trackage, Your Honor, but not by volume. That would be the Union Pacific. But they will be. They may be, yes. They're working hard in Los Angeles. They certainly are. Which is going to be the hub of the world soon. We certainly hope so. I think. Yes, Your Honor. I have three points that I'd like to make. The first is that this case involves just the application of what are, in essence, well-settled rules. There's no grand principles of law to be decided. There are no sweeping pronouncements that are necessary. This is a case that can be decided on narrow grounds based on the unique facts of this case. Second, with respect to RLA preemption, it probably comes as no surprise that I agree with Judge Kristen's analysis that even as narrowed to the dispatcher's negligence, the claim is still about the validity of the dismissal. The torts causation element inevitably intersects with the need to consult the CBA's terms regarding relative fault of employees when someone is disciplined. You cannot dismiss Mr. Wolf if you conclude the dispatcher was responsible. May I ask you a question? Yes, sir. So what you're saying is that Montana Code section is really toothless and worthless. Not at all, Your Honor. When would it apply? What would you need in a case like this to have it apply? If you're referring to the application of the Montana statute in a wrongful discharge case, let me give you an example of how it could. Section 39-2703. Yes, Your Honor. Now, of course, the Montana statute is not limited to the wrongful discharge context. It could easily apply to railroad negligence that has nothing to do with the dismissal of an employee. So, of course, it's not toothless in that context. The tort could. It could. What about this provision, though? In this context, in a wrongful discharge case, the way the Montana statute could be applied is if the case turned solely on a disputed issue of fact that had nothing to do with the collective bargaining agreement, just as in Hawaiian Airlines. The only disputed issue there was motive. So let me give you an example. Suppose everyone Does the statute say that? That it's only if there's a sole disputed issue of fact that doesn't require you to look at the turn on the collective bargaining agreement interpretation? Is that what the statute says? The Montana State law does not the source of preemption authority, Your Honor. That is founded in Federal common law. Oh, I understand that. I understand that. What's the example you're using? So to continue my example, suppose everyone agrees that if the employee, let's say Mr. Smith, threw a switch incorrectly, then he would be subject to discharge. If he didn't throw the switch, then he couldn't be fired. There's no dispute about what the CBA requires. There's no dispute about how the disciplinary standards would apply. The only issue in that case would be did he throw the switch or not. In that kind of a case, then you're in a Hawaiian Airlines Norris situation. There's no need to consult the collective bargaining agreement. There's no need to apply the disciplinary standards like substantial evidence or fair and impartial investigation. Another example would be suppose the allegation of negligence was based on a claim that the employee had reported mismanagement and was fired. The Hawaii case tells us that the statute does not preempt substantive protections provided by State law that are independent. And I take that to mean that don't require construction of the collective bargaining agreement. Yes, Your Honor. If you can apply the State law without construing or applying the collective bargaining agreement, then it's independent and there's no preemption. But here -- And let's say that the dispatcher here was negligent. Sure. Sure. Let me assume. Under Montana law. Absolutely. Let's assume he was. Let's assume that the dispatcher was solely at fault for sending him in the wrong direction, that Mr. Wolf has no responsibility. And he complied with what's the description where he has his, what's it, track authority? Correct. Yeah. Correct. So he gave the -- there's a recording of this, isn't there? Yes, there is. That he gave the dispatcher the correct code and somehow that was misconstrued. Instead of sending him east, he went west. Yes, Your Honor. You know, the tracks move around in different directions. So you might end up east, but you have to start out west. Just like the cab drivers do around here. You know, you want to go this way, they start going that way. Yes, Your Honor. Let me just say as a side note that we certainly don't agree that the dispatcher was at fault. But leaving that aside, let me assume for purposes of this. These are all matters that would have to be taken care of in another lawsuit. Indeed. Let's proceed from the premise that the dispatcher is at fault, that he was negligent. Look at the elements of the tort in Montana, okay? He has a duty of reasonable care. And Montana is a State that's had a lot of trouble with railroads in its past history, right? And I think the railroads would say they've had a lot of trouble with Montana. Anyway, you were saying duty? Everybody has trouble in Montana. That's breach. Okay. Duty? Breach. Okay? That's what you've established by showing the negligence of the dispatcher. You still have to show causation and injury. The injury, the only injury that is alleged in this case is the dismissal from employment. So how do you get from that negligence of the dispatcher to dismissal? Well, you have to consult the collective bargaining agreement, because it matters whether, under the CBA, the relative fault of employees makes any difference. Suppose, for example, the collective bargaining agreement says that in the event that an employee is contributorily negligent, the relative negligence of other employees shall not be a defense. Well, in that case, it's irrelevant whether the dispatcher was negligent or not. There could be no causation as a matter of law because of the collective bargaining agreement. The only way Mr. Wolff could be dismissed was through that collectively bargain process. And so in order to show causation, he has to show that the relative fault of a dispatcher is that it matters, that it is, that it can cause his dismissal. And he cannot do that without interpreting and applying the collective bargaining agreement. It's impossible. Let me turn, then, to the the statute is limited by what? It is limited by Federal preemption. I know you're going to say that, but so it's really of no practical use. No, Your Honor. It's only when the statute, when the Montana law intersects with the need to interpret and apply the collective bargaining agreement. And I think that. May I interrupt right here? Forgive me for interrupting. But Judge Parkerson asked a question a minute ago that I would find helpful. Could you give us an example where it wouldn't intersect? You just explained to us where it would. I think you started to talk about Hawaiian. I don't care what example you want to give us. That would be helpful to me. Sure. And the example that I was laying out about the track switch is one example. Purely factual dispute about whether something did or did not happen in the context where everyone agrees that the person would be fired if A happened and not fired if B happened. Okay? That's a Hawaiian Airlines situation. There's no – that's a situation where all you're doing is looking to or referring to the collective bargaining agreement. There's no dispute, in other words, about what the agreement means or how it should be applied in that factual circumstance. It's simply a question of did this happen or not. Another example is the motive case that I was beginning to lay out, where if the issue under the Montana statute came down to whether the railroad's motive for the action was significant in the alleged negligence. They negligently discharged me because I was retaliated against for blowing the whistle, for example. That that constitutes a breach of their duty of reasonable care. And the only issue there is did the railroad have that motive or not. There's no need to consult the collective bargaining agreement in that context. So there's plenty of circumstances. Does the board's decision here, though, complicate your scenario that they found, yes, that he was at fault, but that he wasn't complete or the punishment was too great? Does that in any way affect the outcome here? Not with respect to preemption, no, Your Honor. Now, while it does affect the outcome, it's with respect to the question that the court raised about the preclusive effect of the November 11th decision. And on that ground, I'd say that you could easily apply either race judicata or issue preclusion based on the determination of the board. And the reason for that is the claim is the same in both contexts. I think the one shorthand way to think of it is it's a claim for negligent dismissal. Now, the facts of those two cases in the grievance handling process and in the Montana claim are exactly the same. The factual predicate is accident, investigation, termination. All right? And under this Court's standards for race judicata, what you look at is a common nucleus of operative facts. Are they the same or not? And there's no debate that they're the same. He's saying that this accident occurred because, one, the railroad provided him with a faulty high rail truck, and also it occurred because the dispatcher failed to provide him with the correct track authority. And authorized him to drive the high rail truck in a certain direction within a confined area of the tracks. Yes. That's correct. They argued exactly the same thing to the arbitrator. Exactly the same thing. They said Mr. Wolfe should not be dismissed because it was the dispatcher that was at fault, and because he had a faulty truck, and because he wasn't given adequate training. Let me, let me, this is, this is in the, in the record of district court docket number 76-8, page 26. This is the union's argument to the arbitrator. Taking as established, then, that the dispatcher mistakenly took in the claimant's track and time request and erroneously issued him another one, it would be plain that the dispatcher is at least 50 percent at fault for the miscommunication. The claimant would be responsible for failing to recognize the dispatcher's mistake, certainly, at best a co-equal mistake. As regards the merits of the charge against the claimant, such failure on the part of the carrier to also charge and discipline the dispatcher, given the assumed facts established, which thereby establish his joint culpability under the applicable rules, is inexcusable. In other words, they're saying you should blame the dispatcher and not dismiss Mr. Wolff. That's the same thing that they're arguing under. Kennedy. What, what, what is it you have to look at the collective bargaining agreement for? You have to determine whether the relative fault of a co-worker matters when someone is charged with a rule violation, because sometimes it may not make any difference. Under the substantial evidence standard, under the Rule 40 standard for fair and impartial investigation, sometimes relative fault of co-workers matters, and sometimes it doesn't. Once you get into relative fault, then you're, Montana, the Montana statute is really   required to apply the collectively bargained standards. Again, and the collective bargaining standards talk about relative fault. Then that vitiates the Montana statute. In this case, it does. But I would point out, Your Honor, that this is not a situation where Mr. Wolff is left with no remedy at all. He had a full and fair. I'm just trying to figure this out. Sure. What's your understanding of the damages here being claimed? I understand that Mr. Wolff is seeking back pay and presumably emotional distress damages. And he also sought punitives as well. But the damages sought is not the inquiry. The question is, what's the injury? And the only injury, he alleges, is the dismissal. I see my time is up. If there are no further. I'm sorry, Your Honor. I say the train's running a little late today. So we still are. Thank you, Your Honor. It's all right. Why do you think Montana passed this statute? My understanding is that the Montana statute was passed a long time ago. And, in fact, it predates the Federal Employer's Liability Act. And so it was an attempt by the Montana legislature to get at the same concerns that have since been replicated in the Federal law, where we don't want railroad employees to be injured negligently by their employer's conduct and have no remedy. And when was this statute passed? I don't know the answer to that, Your Honor. A long time ago. Well, how long is a long time? Nineteen. My colleague may know. I'd say 1920s. 1920s? 1920s or 30s. All right. Oh, I'm sorry. I'm told by my co-counsel it was 1903, Your Honor. 1903. Yes, Your Honor. The year before the Wright brothers took over. I believe that's correct, Your Honor. If there are no further questions. I had a slightly different date. It was 1905, but it's close enough. And it has been used and examined by the Montana Supreme Court within the last five, six years. And the legislature has not chosen to change it. I want to address just a couple of things. Number one, there is no term in the collective bargaining agreement that addresses the question of whether the relative fault of a co-worker matters for the purposes of discipline. You only get, and nothing in paragraph 40 suggests that there is. You have to infer that the substantial evidence standard used by the adjustment board is an implied term of the CBA to get there. Whereas the national adjustment board passes its own rules about how it's going to examine evidence. So to suggest that the idea of weighing of relative fault is dependent on a decision made during the disciplinary process is simply incorrect. The other thing I would like to suggest is if you look at the examples given by counsel in response to your questioning about when would that statute apply. One of them was, okay, hidden motive. If you look at the Montana statute, hidden motive has, there's nothing in it without hidden motive. Negligence is simply negligence and it's simply a negligence statute. So you're never going to have a motive question that falls within that statute. Number two, the switch example where the employee throws a switch and it's just a factual issue. There wouldn't be a cause of action under the Montana statute that way either because I don't see where the negligence is unless there's some kind of allegation that the switch was faulty. So the fact of the matter is that this case isn't so unique. This is a negligence statute that provides a remedy to an individual employee for negligence. The CBA simply does not address that. And neither did the Adjustment Board because it was following the rules of the CBA. Thank you. Thank you. This matter is also submitted.
judges: Pregerson, Murguia, Christen